IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE A. DREIBELBIS, JR., | : | |
| Plaintiff, | : | No. 06-CV-2055 |
| | : | |
| v. | : | Judge Jones |
| | : | |
| LESLIE F. YOUNG, <u>et al.</u>, | : | |
| Defendants. | : | |

## MEMORANDUM

## December 10, 2007

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Presently pending before this Court are cross Motions for Summary Judgment, both filed on November 1, 2007. (<u>See</u> Rec. Docs. 54, 57). For the reasons that follow, Defendants'[1] Motion for Summary Judgment (doc. 54) shall be granted and Plaintiff's[2] Motion for Summary Judgment (doc. 57) shall be denied.

## PROCEDURAL HISTORY:

On October 19, 2006, Plaintiff filed his Complaint in the instant action. (Rec. Doc. 1). Therein, Plaintiff alleges violations of his constitutional rights

---

[1] Defendants to this action are Leslie F. Young ("Young"), Terry L. Watson ("Watson"), and Centre County Children and Youth Services ("CYS"). (<u>See</u> Rec. Doc. 1).

[2] This action was initiated by Wayne A. Dreibelbis, Jr. ("Plaintiff" or "Dreibelbis").

arising out of the proceedings in a custody action in the Court of Common Pleas of Centre County, Pennsylvania. Specifically, Count I avers that in violation of the First Amendment, Plaintiff was retaliated against for complaining about official misconduct; Count II avers that in violation of the First and Fourteenth Amendments, Plaintiff was denied the right to freedom of association with his daughter.

Plaintiff's Complaint requested both monetary damages and injunctive relief. However, following our granting of a Motion to Dismiss (doc. 10), and denial of a Motion for Reconsideration (doc. 20), only Plaintiff's claims for monetary damages remain viable. (See Rec. Docs. 19, 23).

On November 1, 2007, the parties filed their respective Motions for Summary Judgment. (See Rec. Docs. 54, 57). Although the Motions have not been fully briefed, the periods in which the parties were to have filed any additional submissions have passed. Accordingly, the Motions are ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340

(3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. See Celotex, 477 U.S. at 322-23 (1986).

It is important to note that "the non-moving party cannot rely upon

3

conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## STATEMENT OF RELEVANT FACTS:

Preliminarily, we note that in violation of Rule 56.1[3] of the Local Rules of

---

[3] Rule 56.1 of the Local Rules for the Middle District of Pennsylvania provides:

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56, shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.
The papers opposing a motion for summary judgment shall include a separate,

this Court, Plaintiff's counsel[4] utterly failed to oppose Defendants' Motion.

Indeed, as is quite clear based on the plain language of Local Rule 56.1, Plaintiff's

filing of his own Motion and Statement of Material Facts is not technically

sufficient to either oppose Defendants' Motion[5] or deny Defendants' Statement of

Material Facts.

With respect to the factual circumstances underlying this action, we note

that given Plaintiff's failure to respond to Defendants' Statement of Material Facts

(doc. 55), we could view all facts[6] contained therein to be deemed admitted.  See,

---

short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

    Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

    All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

[4] To be clear, we refer to J. Michael Considine, Jr., Esq., the only attorney for Plaintiff on record at the expiration of the period in which to file materials opposing Defendants' Motion. However, we do question why Michael P. Gordon, Esq., who recently entered his appearance on Plaintiff's behalf, failed to move the Court to permit such submissions nunc pro tunc.

    In any event, we are confident that even had such submissions been filed, in either a timely or untimely fashion, they would not have changed the conclusion that we reach herein.

[5] However, as outlined below, we will grant Defendants' Motion on the merits, rather than by virtue of deeming it unopposed.

[6] It is well-established that conclusions are law are not deemed admitted by the failure to respond thereto.  See, e.g., Ferens v. Deere & Co., 639 F. Supp. 1484, 1486 (W.D. Pa. 1986), vacated on other grounds, 487 U.S. 1212 (1988); Can-Tex Industries v. Safeco Ins. Co., 460 F. Supp. 1022, 1023 (W.D. Pa. 1978). Thus, despite Plaintiff's failure to respond to Defendants' Statement of Material Facts, none of the conclusory paragraphs therein are admitted.

e.g., <u>Katz v. Realty Equities Corp.</u>, 406 F. Supp. 802, 805 (S.D.N.Y. 1976); <u>United States v. Trans-World Bank</u>, 382 F. Supp. 1100, 1102 (C.D. Ca. 1974). However, in the interest of caution, we will deem admitted only those facts from Defendants' Statement of Material Facts that are not in some way contradicted by Plaintiff's brief supporting his Motion, Plaintiff's Statement of Material Facts, or Plaintiff's Exhibits.[7] <u>See</u> <u>Tome v. Harley Davidson Motor Co.</u>, 2007 U.S. Dist. LEXIS 78789, at *1-2 (M.D. Pa. Oct. 24, 2007) (deeming admitted only those portions of a statement of facts that were not contradicted by opposing party's non-responsive statement of facts); <u>Anchorage Assocs. v. Virgin Islands Bd. of Tax Review</u>, 922 F.2d 168, 176 (3d Cir. 1990) (holding that local rules, such as the one at issue here, are permissible provided that district courts conduct the merits analysis, whether summary judgment is appropriate, required by Federal Rule of Civil Procedure 56); <u>Good v. Dauphin Co. Social Servs. for Children and Youth</u>, 891 F.2d 1087, 1095 (3d Cir. 1989) (declining to assume the district court granted summary judgment on the ground that the plaintiff failed to file a statement of material facts where: 1) the district court had not expressly indicated that summary judgment was entered on that basis; and 2) circumstances, including plaintiff's <u>pro</u>

---

[7] We urge Plaintiff's counsel to observe more closely the Local Rules when submitting future filings to this Court.

se status, weighed against deeming the statement of material facts admitted).[8]

Thus, our recitation of the facts underlying this action is based in part on those outlined in Defendants' Statement of Material Facts (doc. 55) and in large part on our thorough and independent review of the record submitted by the parties in support of their respective Motions.[9] (See Rec. Docs. 55-2, 60, 61 (including Exh. 12, which is not on the docket, but was received by Chambers)). As required by the standard of review applicable to motions for summary judgment, and in light of our disposition herein, we have viewed all facts and inferences therefrom in the light most favorable to Plaintiff.

On or about August 1, 2003, Dreibelbis filed a divorce complaint against Beth Berube Dreibelbis ("Berube") in the Court of Common Pleas of Centre County, Pennsylvania. (Rec. Doc. 55-2 at 16-20). Since that time, Dreibelbis and Berube have been involved in a custody dispute over their daughter, M.B. Id. at 21-23. Both the divorce action and the custody dispute have been or are in the process of being adjudicated by the Honorable David G. Grine. See, e.g., id. at 24, 30-32, 35, 67-73.

---

[8] We express no view on whether our somewhat generous treatment of Plaintiff's failure to file a responsive Statement of Facts is actually required under Third Circuit precedent because Good involved a pro se litigant.

[9] Unless otherwise noted, the events outlined are not disputed.

Several of Judge Grine's orders are relevant to this action; for the purposes of clarity, we will outline them in sequence. On November 2, 2004, Judge Grine issued an order granting Berube full legal and physical custody of M.B. Id. at 24. Subsequently, on October 25, 2005, Judge Grine ordered, inter alia, that "Father WAYNE A. DREIBELBIS, JR. shall have such time with the child as is arranged by and supervised by Centre County Children & Youth Services." Id. at 30. By November 9, 2005, no such visits had either taken place or been scheduled, and thus, on same date, Judge Grine noted in an order that "Centre County Children and Youth Services has advised the Court and counsel that they will be arranging the supervised visits per the Court's previous order. The arrangements by CYS for supervised visits with the Father shall be with the Father only, no other individuals, including paternal grandparents." Id. at 35.

At the heart of Plaintiff's complaints in this action is the execution of Judge Grine's October 25, 2005 order directing CYS to supervise visits between M.B. and Dreibelbis. Indeed, in the more than two (2) years following the issuance of said order, no such visitations have occurred.

However, a few such visitations were scheduled. The first such visit was to

8

take place on November 28, 2005,[10] but it did not occur, in part, because Dreibelbis brought a video recorder thereto, which he intended to use to record he and M.B.'s interaction. (Rec. Doc. 61, Exh. 5, at 33). The parties virulently dispute the impact that Dreibelbis's intent to record this interaction had on the scheduled visit: Dreibelbis contends that upon seeing the video camera, Young refused to allow him to visit with M.B.; Defendants contend that upon being told that he could not record the visit, Dreibelbis refused to participate in the visit.

Notably, following this initial interaction between Young and Dreibelbis, Dreibelbis returned to CYS's waiting room, where he proceeded to record, without permission, brief discussions between himself and Young and Mr. Randall Harrison ("Harrison"). (See Rec. Doc. 61, Exh. 12 (as noted above, this is not actually available on the docket)). Defendants contend that the video clip of this interaction, which Plaintiff produced in discovery, contains a statement by Plaintiff that "I told her if I can't videotape it to gather the evidence, I don't want to be able to . . . ah . . . go forward at this time." (Rec. Doc. 55, ¶ 33). Despite watching multiple times Plaintiff's Exhibit 12, which should be the same video

---

[10] We are aware that Plaintiff is dissatisfied with the approximately one (1) month delay between Judge Grine's order and the first scheduled visitation. However, in light of the fact that Young did not become aware of the order until November 9, 2005, and the limited resources within which CYS must operate, we see no cause for concern in this brief delay.

clip as that Plaintiff produced to Defendants during discovery, we heard no such statement.[11] Accordingly, given the standard of review applicable to the Motion, we must and will assume that no such statement took place during the time that video taping occurred.

However, Dreibelbis's own letters[12] to Young and Watson following this failed visit indicate that it was Dreibelbis's refusal to participate in an un-recorded, and unmonitored by an expert capable of diagnosing parental alienation

---

[11] The potential disparity between the video produced in discovery and that submitted to the Court by Plaintiff's counsel leaves us troubled.

As to Plaintiff's counsel, we note that Mr. Considine is ethically bound to conduct himself with integrity in proceedings before this Court. Although we offer no opinion on whether the video produced to defense counsel in discovery and that offered to this Court in the context of the pending Motions differ, we find the mere possibility that the video clips differ very disturbing.

As to defense counsel, we note that this entire situation was easily avoidable, and we would recommend that counsel take steps to avoid it in the future, e.g. mail Chambers the video clip, as Plaintiff's counsel did. Indeed, we are cognizant that because the Clerk's office apparently indicated that video clips could not be attached to Defendants' Motion due to the Court's filing system, defense counsel planned to petition the Court to allow introduction of the clip produced in discovery in the event that Plaintiff disputed the statement at issue. The problem is that, as already noted, Plaintiff did not technically dispute this statement, and, thus, defense counsel was not triggered to so petition. However, given our reluctance to make a case-dispositive determination solely on technical violation of the Local Rules, we are constrained to assume that no such statement was made in the context of Dreibelbis's interaction with Young and Harrison in CYS's waiting room.

[12] In his deposition, Dreibelbis clearly acknowledged that the November 30, 2005 letters to Young and Watson were written by him. (See Rec. Doc. 60-5, Exh. 3, at 28-33 (discussing letter to Watson), 33-45 (discussing letter to Young)). Moreover, Plaintiff's counsel attached the same as exhibits to Plaintiff's Motion. (See Rec. Doc. 61, Exh. 5). Thus, neither his sending of the letters nor their contents can be disputed.

10

syndrome ("PAS"),[13] visit with M.B. that prevented him from seeing his daughter

on November 28, 2005. (See Rec. Doc. 55-2 at 39-48).  Specifically, in his

November 30, 2005 letter to Young, Dreibelbis stated, in pertinent part:

> You will recall that I informed you that I love my daughter very much.  So
> much, that I place her rights and interests before my own.  Naturally, I could
> be like many fathers and cave into the pressure of going ahead with a visit
> without protecting the interests of their child by having someone who is not
> qualified to diagnose any abusive behavior traits.  I do not believe that the
> ends ever justify the means.  My daughters [sic] welfare is at the forefront
> and is my utmost concern and this is precisely why I place my own selfish
> ambitions of spending time with her aside to make sure that [M.B.'s] rights
> are protected and if in any way shape or form of harm and/or abuse has been
> inflicted upon her that it be immediately detected and dealt with
> accordingly.  Mr. Watson made the snide and unprofessional remark of
> questioning why I would not go ahead with the visit with my daughter and I
> informed him just as I have you that the ends do not justify the means.
> Perhaps you and Mr. Watson both feel that the ends justify the means but
> ethically and morally I do not.  There is such a thing as right and wrong in
> my book and I do not think in terms of black and white but prefer terms of
> light and darkness.  I prefer to live in the light and by God's grace thru the
> power of His Holy Spirit shine His light into the darkness . . . .
>
> Again, I want to thank you for calling earlier today and when I hear more
> from my attorney about how we will be moving forward with visitation my
> attorney or I will be in touch.

Id. at 45-46, 47 (emphasis added).  In a November 30, 2005 letter to Watson,

Dreibelbis similarly stated:

---

[13] By way of background, Dreibelbis believes that at least Berube, and perhaps CYS, has
contributed to the breakdown in his relationship with M.B., and that such can be ascertained via
the evaluation of M.B. for PAS.  Dreibelbis has made it quite clear to CYS that he would like an
expert in PAS to observe Dreibelbis's visits with M.B. and/or a videotape of such visits, which
could then be viewed by a PAS expert.

I have and will continue to put [M.B.'s] interests before my own selfish ambitions and I hope that this makes clear my intentions regarding my daughter [M.B.]. <u>For me to have gone thru with a visit with M.B. would have been a tremendous injustice to her</u> . . . <u>M.B.'s first visit with me is precisely where PAS would be most evident</u> and it would be a great disservice for your agency to permit this harm (if evident) to not go noticed, documented, reported and addressed as soon as possible. Certainly you would not want any abuse to not go observed and documented. Again, this is precisely why it is necessary to video tape the visits . . . .

Again, I want to thank you for meeting with me 28 November 2005. <u>When I hear more from my attorney regarding visitation he or I will be in touch with your office.</u>

<u>Id.</u> at 40, 44 (emphasis added).

Despite Dreibelbis's apparent wish to refrain from visiting M.B. without either a PAS expert present or video recording, which his words suggest that he planned to take legal action in order to effectuate, Young attempted to schedule another visit between Dreibelbis and M.B., and she did so upon the instruction of Judge Grine. (Rec. Doc. 61, Exh. 2, at 42). In a November 30, 2005 letter to Dreibelbis, Young indicated that "since you are working on December 5, 2005, the visit between you and your daughter [M.B.] has been arranged for December 12, 2005 . . . ." (Rec. Docs. 55-2 at 49; 61, Exh. 5, at 44). Replying to Young's November 30, 2005 letter in his own letter, dated December 4, 2005,[14] Dreibelbis

---

[14] For the sake of completeness, we note that Dreibelbis also acknowledged writing this letter (doc. 61, Exh. 3, at 36), and that our quotation therefrom was taken from Plaintiff's Exhibits.

stated:

> I'm in receipt of your letter dated 30 November 2005.
>
> Apparently you <u>have not received my correspondence dated 30 November 2005 as well as not recalling that you will be notified by my attorney or I regarding visitation</u> once the matter of video taping the visit and having someone qualified to supervise a visit that is capable of detecting abuse, specifically, Parental Alienation Syndrome.
>
> . . .

(Rec. Doc. 61, Exh. 5, at 45 (emphasis added)).

In spite of his own written words, Dreibelbis now attempts to contend that CYS is responsible for the December 12, 2005 visit not occurring. (See Rec. Doc. 61, Exh. 3, at 38). Indeed, at his deposition, Dreibelbis testified that in response to Young's November 30, 2005 correspondence, he "wrote back to them letting them know that I had to work that day. It was impossible for me to be there. I believe that's what I wrote back. I believe it was on that letter –." Id. Although the record is not clear that it is Dreibelbis's December 4, 2005 letter to which he refers, it appears to us as if that is the case because our thorough review uncovered no other written correspondence from Dreibelbis to CYS in December 2005. Moreover, upon our review of the December 4, 2005 letter from Dreibelbis to CYS, we found no indication that work prevented him from attending the visitation scheduled for December 12, 2005. Rather, it appears that, at best,

13

Dreibelbis's deposition testimony confuses his earlier, apparently oral, communication to Young that the suggested December 5, 2005 visit could not occur because he had to work on that day.  (See also Rec. Doc. 61, Exh. 2, at 14-15 (Young noting in her deposition testimony that she was never informed that Dreibelbis could not attend the December 12, 2005 visitation due to work or other scheduling conflicts)).

In any event, Dreibelbis did not appear for the visitation that had been scheduled for December 12, 2005.  (Rec. Doc. 61, Exh. 3, at 38).  Moreover, from the time CYS received Dreibelbis's December 4, 2005 letter, its employees worked under the assumption that Dreibelbis would be litigating the videotaping and PAS expert issues before Judge Grine.  Only time revealed that Dreibelbis chose not to do so.  (Rec. Doc. 55-2 at 12-14; at 82).

Since December 12, 2005, a myriad of correspondence from Dreibelbis and/or his initial counsel in this action, Mr. Considine, has been sent to CYS and other various officials and/or agencies.  However, as of the date of Dreibelbis's deposition, Mr. Considine had never entered his appearance on behalf of Drebelbis in the underlying custody action.  (Rec. Doc. 60-5, Exh. 3, at 28).  Thus, it is not unexpected that with the exception of a letter to Mr. Considine that was sent prior to CYS realizing he was not Dreibelbis's attorney of record in the custody matter

(doc. 60-3, Exh. 2, at 71-74), CYS did not respond to any correspondence from Mr. Considine.  Moreover, given Dreibelbis's repeated refusal to participate in visitations until they were videotaped and/or attended by a PAS, it is not unexpected that with the exception of the return of the card and gifts deemed inappropriate for M.B. by Judge Grine (doc. 61, Exh. 5, at 56), CYS did not respond to further correspondence from Dreibelbis.

When it became apparent to CYS that despite his inaction in state court, Dreibelbis was unhappy that he had not yet visited with his daughter, CYS's counsel, James Johnson, sent Judge Grine a letter, dated August 1, 2006, which indicated that CYS would not initiate further action in the visitation matter without direction to do so from the Court.  (Rec. Doc. 55-2 at 53-54).

On or about February 23, 2007, approximately four (4) months after he instituted this federal action (see doc. 1), Plaintiff finally filed a petition in state court that sought to modify the custody order Judge Grine had put into place. (Rec. Doc. 55-2 at 55-66).  However, on July 6, 2007, following a hearing on Plaintiff's petition, Judge Grine denied the same.  (Rec. Doc. 55-2 at 67-72).  He did so on the grounds that, inter alia, but in no particular order: 1) because of his insistence on videotaping, Dreibelbis is responsible for the lack of visitation between himself and M.B.; 2) Dreibelbis continues to be more interested in

pursuing legal action than in visiting M.B.; and 3) it is in M.B.'s best interest to continue under the custody and visitation orders previously entered. Id. Thus, as recently as July 6, 2007, Judge Grine explicitly approved of CYS's actions in this matter.[15]

## DISCUSSION:

In short, in their Motions for Summary Judgment and supporting documents, the parties argue as follows: Defendants argue that their Motion should be granted and this action should be closed for numerous, alternative reasons: 1) Plaintiff has failed to state a claim for any Constitutional violation because Plaintiff's claims "are based upon the misconception that the defendants are required to comply with the statutory guidelines for visitation with 'dependent' children" (doc. 56 at 10); 2) as agents of the court, Young and Watson enjoy absolute immunity; 3) Young and Watson are entitled to qualified immunity; 4) Plaintiff has failed to state a Monell[16] claim because CYS and its employees only executed orders from Judge Grine; 5) any claim for procedural due process is defeated because Plaintiff has adequate remedies available to him in state court; 6)

---

[15] One modification has occurred since the entry of Judge Grine's July 2007 order. Indeed, given this legal action against Defendants, it is no surprise that on August 16, 2007, Judge Grine ordered that Dreibelbis's visitations with M.B. be supervised by Raystown Developmental Services, in Huntington, Pennsylvania. (Rec. Doc. 55-2 at 73).

[16] See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

16

the Court should decline to exercise jurisdiction over this action due to the applicability of the Rooker-Feldman doctrine.[17] (Rec. Doc. 56). On the other hand, in the brief supporting his Motion, Plaintiff simply asserts that he has stated a claim for retaliation, that his right to association with his child has been violated, and that qualified immunity is not applicable here. (Rec. Doc. 58 at 3, 18-20).

Given that the applicability of the Rooker-Feldman doctrine is jurisdictional, we address this issue first.

## A.    The Rooker-Feldman Doctrine

It is well-settled that federal courts lack jurisdiction to review state court judgments where the relief sought is in the nature of appellate review. See Feldman, 460 U.S. 462; Rooker, 263 U.S. 413; Blake v. Papdakos, 953 F.2d 68, 71 (3d Cir. 1992). Pursuant to the Rooker-Feldman doctrine, a federal district court should decline to exercise jurisdiction over "federal question" claims when those federal claims have been or could have been the subject of state court proceedings which culminated in a state court decision. For a federal district court to exercise jurisdiction under such circumstances would be tantamount to reviewing the final judgment of a state court, which power lies exclusively in the

---

[17] This doctrine is named for Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

United States Supreme Court by application for writ of certiorari under 28 U.S.C.

§ 1257.  See E.B. v. Verniero, 119 F.3d 1077, 1090-91 (3d Cir. 1997), cert.

denied, 522 U.S. 1110 (1998).  Thus, a litigant cannot circumvent Rooker-

Feldman by styling his or her complaint as a civil rights action.  See Holt v. Lake

County Bd. of Comm'rs, 408 F.3d 335, 336 (7th Cir. 2005) (per curiam).

Courts have applied the doctrine and thereby precluded jurisdiction over

actions in federal court in two circumstances: (1) if the claim was "actually

litigated" in state court prior to the filing of the federal action; or (2) if the claim is

"inextricably intertwined" with the state adjudication.  Feldman, 460 U.S. at 483-

84, n.16.  A claim is "inextricably intertwined" when "federal relief can only be

predicated upon a conviction that the state court was wrong."  Bolus v. Cappy, 141

Fed. Appx. 63 (3d Cir. 2005).  Thus, the Rooker-Feldman doctrine applies to

"cases brought by State-Court losers complaining of injuries caused by the State-

Court judgments rendered before the District Court proceedings commenced and

[which invite] District Court review and rejection of those judgments."  Korelis v.

State of New Jersey Judicial Officials and Court Process Action, 201 Fed. Appx.

870 (3d Cir. 2006).

Recently, the Supreme Court confined the application of the Rooker-

Feldman doctrine to those cases (1) brought by state-court losers (2) complaining

of injuries caused by state court judgments (3) rendered before the District Court proceedings and (4) inviting District Court review and rejection of those arguments.  <u>Allen v. Pennsylvania Society for the Prevention of Cruelty to Animals</u>, 2007 U.S. Dist. LEXIS 35010, at \*16 (M.D. Pa.) (quoting <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)) (citations omitted).

It is apparent to the Court that the <u>Rooker-Feldman</u> doctrine operates as a bar to Plaintiff's claims against moving Defendants.  Although Plaintiff's Complaint was filed prior to Judge Grine's July 6, 2007 order, it is quite clear that in order for Plaintiff, now a "State-Court loser,"[18] to succeed in this action, he must challenge the validity of Judge Grine's July 6, 2007 decision that CYS and its employees properly followed his October 25, 2005 visitation order and were willing to supervise Plaintiff's visits with his daughter, M.B.  Indeed, Plaintiff's request for monetary relief from this Court would require review and rejection of the determinations made by Judge Grine in the state court custody action.  Specifically, for such relief to be granted, this Court would have to find that CYS or its employees deprived Plaintiff of his Constitutional rights by failing to

---

[18] We note that Plaintiff failed to appeal Judge Grine's July 6, 2007 order, rendering it final.  This lends additional support to our view that the <u>Rooker-Feldman</u> doctrine acts as a bar, because it is evident that Plaintiff seeks, in effect, to circumvent the proper state court appellate process and to utilize this Court as the <u>de facto</u> court of appeals.

properly execute the October 25, 2005 order.  Such a finding would necessarily

overturn Judge Grine's July 6, 2007 order, and that is exactly what <u>Rooker-</u>

<u>Feldman</u> prohibits.  <u>See</u>, <u>e.g.</u>, <u>Nixon v. Tioga County Family Servs.</u>, 2007 U.S.

App. LEXIS 23317 (3d Cir. 2007) (affirming district court's dismissal of a civil

rights suit brought by a father dissatisfied with state court's termination of

telephonic visitation).  In short, we cannot, and will not, permit Plaintiff or his

counsel to make this Court some sort of super-appellate court for state courts.

Thus, pursuant to the <u>Rooker-Feldman</u> doctrine, this Court lacks jurisdiction to

review the actions of the state courts in this matter.

**B.    Assuming <u>arguendo</u> that this Court has Jurisdiction, Defendants are Entitled to Summary Judgment on a Number of Grounds**

Even assuming <u>arguendo</u> that <u>Rooker-Feldman</u> does not bar this action,

Defendants have raised numerous other grounds upon which they are entitled to

summary judgment.[19]  For example, as Watson and Young were acting only as

agents of the state court, and as Judge Grine recently approved of their actions as

in accordance with his October 25, 2005 order, they are entitled to absolute, quasi-

judicial immunity.  <u>See</u>, <u>e.g.</u>, <u>Stump v. Sparkman</u>, 435 U.S. 349, 363 (1978)

---

[19] To be clear, under these circumstances, we see no need to address each of Defendants' six, largely alternative grounds for dismissal.  Rather, we simply touch on those that we have found to be most salient.  However, in so doing, we do not mean to suggest that the other proffered reasons are invalid.

(discussing judicial immunity generally); Butz v. Economou, 438 U.S. 478, 515 (1978) (extending judicial immunity to agency officials); Waits & McGowan, 516 F.2d 203, 206 n.6 (3d Cir. 1975) (recognizing that judicial immunity applies to police officers engaged in ministerial functions pursuant to court order).

By way of further example, any Monell claim against CYS fails because the very heart of such a claim, an unconstitutional policy or practice, is not present here. See Bd. of Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997); Oklahoma City v. Tuttle, 471 U.S. 808 (1985); Monell, 436 U.S. 690-91, 694. Indeed, Watson and Young's testimony establishes that at every turn, their actions were directed by Judge Grine, rather than CYS policy: whether to schedule another visit following Plaintiff's refusal to participate in the November 28, 2005 visit; whether to permit Plaintiff's videotaping of visits;[20] and whether to transmit the card and materials that Plaintiff wished them to relay to M.B. in February of

---

[20] Although there is some indication in the record that CYS had a policy or practice of not allowing videotaping, there is also clear testimony that following Plaintiff's expressed desire to record visits, Judge Grine was consulted. Had Judge Grine wished recorded visits to take place, clearly said visits would have occurred. Therefore, the instructions of Judge Grine, and not any policy or practice of CYS, determined the conditions of any visits between Plaintiff and his daughter.

Plaintiff also complains that CYS had an unwritten policy or practice of responding to inquiries from only counsel of record. However, the same is no basis for a Monell claim as, in fact, providing information to only counsel of record is a well-established, and justified, practice within the legal community, and, indeed, this Court. That Plaintiff's counsel would attempt to rely upon such an argument is frankly astounding.

2006. Thus, as CYS and its employees were acting as agents of the state court, merely executing Judge Grine's orders, following consultation with him as required, no viable <u>Monell</u> claim against CYS exists.

Finally, even assuming <u>arguendo</u> that all of the aforementioned reasons do not justify entry of summary judgment, we turn to Plaintiff's arguments that he has sufficiently established <u>prima facie</u> cases of violation of his First and Fourteenth Amendment rights.  To establish, generally, such § 1983 claims, plaintiffs must demonstrate: (1) a deprivation of federal rights secured by the Constitution and the laws of the United States; and (2) the alleged deprivation was committed by a person acting under color of state law.  <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 284-285 (2002); <u>Nicini v. Morra</u>, 212 F. 3d 798, 806 (3d Cir. 2000).

Here, Plaintiff cannot satisfy the first element, a deprivation of federal rights, because as Judge Grine found, <u>Plaintiff</u> is the reason that none of the ordered, supervised visitations between himself and M.B. occurred.  Indeed, despite Plaintiff's clearly considered efforts to document, whether via video recording or a writing, certain purportedly favorable aspects of the circumstances underlying this action, Plaintiff's efforts have failed.  Rather, as outlined in detail above, Plaintiff's own writings make it very plain, <u>i.e.</u> undisputed, that: 1) Plaintiff chose not to visit M.B. on November 28, 2005 because he was not permitted to

22

record the visit; 2) Plaintiff thought documentation of the first such visit would be critical for an evaluation of M.B. for PAS; 3) apparently as a result of said belief, Plaintiff refused to participate in a planned December 12, 2005 visit because he wished, instead, to pursue legal action that could enable such visits to be attended by a PAS expert and/or recorded; and 4) Plaintiff failed to take any such legal action in a timely matter.  Thus, we agree wholeheartedly with Judge Grine's July 6, 2007 determination that Plaintiff is responsible for the lack of visitations between himself and his daughter, and we hold that no reasonable jury could find otherwise under these circumstances.[21]  Accordingly, we conclude that no violations of the Constitution have occurred, and we see no reason to engage in a protracted legal analysis as to Plaintiff's First and Fourteenth Amendment claims.

**CONCLUSION:**

For all of the foregoing reasons, we shall grant Defendants' Motion and deny Plaintiff's Motion.  An appropriate Order closing this case shall issue on today's date.

---

[21] In the nearly twenty-two (22) years that we practiced law prior to assuming our present duties, we had occasion to litigate more child custody cases than we can tally.  Plaintiff's conduct is sadly indicative of much of what we saw.  While Plaintiff protests that this is all about his daughter, and not him, it is easy to see that Judge Grine has him sized up correctly.  We can think of few more maladroit and provocative things to do than to videotape a visitation with one's minor child.  Aside from the general inappropriateness of such behavior, it is apparent that Plaintiff hasn't a clue how this might impact his daughter.  That Plaintiff cites the principle of "right and wrong" in his letters to CYS betrays that in reality this entire exercise is all about him.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WAYNE A. DREIBELBIS, JR.,    :
         Plaintiff,        :    No. 06-CV-2055
                :
         v.          :    Judge Jones
                :
LESLIE F. YOUNG, et al.,    :
         Defendants.    :

## JUDGMENT

## December 10, 2007

In accordance with the Memorandum issued on today's date, it is hereby

ordered that:

1.    Defendants' Motion for Summary Judgment (doc. 54) is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment (doc. 57) is **DENIED**.

3.    Plaintiff's Motion for Leave to Attend Pre-Trial Conference via

      Telephone (doc. 69) is **DENIED** as moot.

4.    Judgment is hereby entered in favor of all Defendants on all claims.

5.    The Clerk of Court is directed to **CLOSE** this case.

John E. Jones III
United States District Judge

1